**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

Juvenska Charles,

Plaintiff,

Civil Action No.: _______________

v.

Equifax Information Services, LLC,

Defendant.

**JURY TRIAL DEMANDED**

## I. COMPLAINT

Juvenska Charles is a thirty-two-year-old woman living in Massachusetts, trying to do what the credit system promises is possible: review her own file, understand what creditors see, and take control of her financial future. On April 14, 2026, she requested her file disclosure directly from Equifax. What she received was not a complete record. It was a document riddled with frozen dates, empty data columns, and balances that exceeded the very credit ceilings Equifax itself had recorded, account after account, page after page. The harm is not abstract. A person cannot verify what a lender sees, cannot catch errors, and cannot protect herself when the information Equifax shows her is materially different from what Equifax transmits to creditors.

When Ms. Charles reviewed her Equifax disclosure, Confirmation Number 6104583431, dated April 14, 2026, she found something deeply wrong. On the USAlliance Federal Credit Union

secured credit card account, the same payment date, January 5, 2024, appeared frozen and identical across twenty-two consecutive months of history, even as the account continued to carry a charge-off designation and a reported past-due balance of ninety-two dollars. On two US Department of Education collection accounts, the reported balances exceeded the stated high credit figures, a data conflict that cannot exist on a legitimate account entry. Across every tradeline on the report, the Actual Payment Amount column was either blank or populated with static placeholder values. Nothing she received allowed her to confirm whether the information in her file was accurate.

The scope of what Equifax withheld is not the product of one bad data entry. Ms. Charles's April 14, 2026 file disclosure contains in excess of one hundred seventy-five blank, missing, or static placeholder data fields across seven credit accounts. On the USAlliance secured card account alone, Equifax produced a payment date frozen at January 5, 2024 across twenty-two consecutive rows while the balance, status, and delinquency history of that account never changed for two years. The identical frozen date appearing uniformly across the entire history of an active charge-off account is not coincidence. It is the output of a systemic data policy that omits payment detail from consumer-facing disclosures while preserving and transmitting that same data to third-party lenders and creditors who pay for it.

The Fair Credit Reporting Act, 15 U.S.C. Section 1681g(a)(1), requires Equifax to clearly and accurately disclose all information in a consumer's file at the time of the consumer's request. The Federal Trade Commission placed every nationwide consumer reporting agency on specific notice more than twenty-five years ago, in its June 30, 2000 Advisory Opinion to Katrina Darcy, that withholding file data from consumer disclosures while providing it to third parties violates this requirement. Equifax has operated under that notice for over a quarter century. The uniform, systematic nature of the omissions on Ms. Charles's report, the identical frozen dates, the blank

payment columns, the balances that exceed stated credit limits, confirms that these omissions are not accidental. They are the product of deliberate policy.

Ms. Charles brings this action to obtain a complete and corrected file disclosure, to hold Equifax accountable for its willful disregard of her statutory rights, and to recover the actual and statutory damages the Fair Credit Reporting Act provides. She asks this Court to do what the law has always promised: require that the file Equifax shows her contain the same information it provides to everyone else.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. Section 1681p and 28 U.S.C. Section 1331, as this action arises under the laws of the United States, specifically the Fair Credit Reporting Act, 15 U.S.C. Sections 1681 et seq.
2. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b) because Plaintiff Juvenska Charles resides in this District and a substantial part of the events giving rise to the claims occurred here, including Plaintiff's receipt of the incomplete file disclosure at issue in this action.

## III. PARTIES

3. Plaintiff Juvenska Charles is a natural person residing at 687 Washington Street, Apartment 1, Dorchester Center, Massachusetts 02124. Plaintiff is a "consumer" within the meaning of 15 U.S.C. Section 1681a(c).
4. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a nationwide "consumer reporting agency" within the meaning

of 15 U.S.C. Section 1681a(f), in that it, for monetary fees, dues, and on a cooperative nonprofit basis, regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, using means and facilities of interstate commerce. Defendant's registered agent in the State of Massachusetts may be located through the Massachusetts Secretary of State's corporate database.

## IV. FACTUAL ALLEGATIONS

### A. Credit Report Overview

5. On April 14, 2026, Plaintiff Juvenska Charles requested and received her consumer file disclosure from Equifax, bearing Confirmation Number 6104583431 (the "Disclosure"). The Disclosure is dated April 14, 2026 and was prepared by Equifax Information Services, LLC.

6. The Disclosure contains seven credit account tradelines, two collection entries, and two hard inquiries. The accounts span account types including auto loan, education loans, and a secured credit card.

7. Equifax is required by 15 U.S.C. Section 1681g(a)(1) to "clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request." The term "file" is defined by 15 U.S.C. Section 1681a(g) to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."

8. On information and belief, data furnishers reported complete payment history, actual payment amounts, scheduled payment amounts, balance histories, and account status information to Equifax, and this information was contained within Equifax's file on Plaintiff at the time of her April 14, 2026 request.

9. On information and belief, Equifax maintains this complete data in its internal databases and transmits it to third-party purchasers of consumer reports, including the creditors identified in the hard inquiry section of the Disclosure, while systematically withholding it from Plaintiff's own file disclosure.

**B. Incomplete Disclosure -- Account-by-Account Blank and Missing Field Inventory**

10. Western Funding Inc., Account *1273 (Auto Loan, Pays As Agreed). The 24-Month History table for this account contains fifteen rows of data spanning November 2024 through February 2026. The Credit Limit field is blank on all fifteen rows. The Actual Payment Amount field is blank for November 2024. The payment date field in the header area for the account shows no Date of First Delinquency, no Date Closed, and no Deferred Payment Start Date. Critically, on the rows corresponding to November 2025, October 2025, and September 2025, the Last Payment Date column shows the identical date of July 11, 2025 across three consecutive months, a static placeholder date that does not reflect actual monthly payment activity. This account contributes in excess of thirty blank or static placeholder data fields to the Disclosure.

11. US Department of Education, Account *3675 (Education Loan -- Closed). This account carries four narrative codes: 057 (Collection Account), 118 (Customer Unable to Locate Consumer), 132 (Fixed Rate), and 248 (Student Loan). The following fields are blank in the Disclosure: Account Status, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Date Closed, Activity Designator, Deferred Payment Start Date, Balloon Payment Amount, Balloon Payment Date, Term Duration, and Charge Off Amount. The 24-Month History table contains a single row for February 2026. On that row, the Scheduled Payment Amount field, Actual Payment Amount field, and Last Payment Date field are all blank. This account contributes in excess of twenty blank or missing data fields to the Disclosure.

12. US Department of Education, Account *3670 (Education Loan -- Closed). This account bears the same narrative codes as Account *3675: 057, 118, 132, and 248. The following fields are blank: Account Status, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Date Closed, Activity Designator, Deferred Payment Start Date, Balloon Payment Amount, Balloon Payment Date, Term Duration, and Charge Off Amount. The 24-Month History table contains a single row for February 2026 with the Scheduled Payment Amount, Actual Payment Amount, and Last Payment Date fields blank. This account contributes in excess of twenty blank or missing data fields to the Disclosure.

13. USAlliance Federal Credit Union, Account *2785 (Secured Credit Card -- Closed, Charge Off). This account carries narrative codes 067 (Charged Off Account) and 041 (Secured Credit Card). The following header fields are blank: Scheduled Payment Amount, Actual Payment Amount, Activity Designator, and Date Closed. The 24-Month History table contains twenty-two rows spanning April 2024 through February 2026. On every single one of the twenty-two rows, the Scheduled Payment Amount field is blank and the Actual Payment Amount field is blank -- forty-four consecutive blank payment data fields. Further, across all twenty-two rows, the Last Payment Date column contains the identical date of January 5, 2024. This date does not change for any of the twenty-two months presented. The same date appearing identically across twenty-two consecutive rows on a charge-off account is not the result of monthly reporting; it is a static placeholder value that has been frozen in Plaintiff's file disclosure. This account contributes in excess of fifty blank or static placeholder data fields to the Disclosure.

14. Dept of Ed/Aidvantage, Account *0221 (Education Loan -- Closed, Transfer/Sold, was over 120 Days Past Due). This account bears narrative codes 088 (Student Loan -- Payment Deferred), 123 (Account Transferred or Sold), 132 (Fixed Rate), 248 (Student Loan), 262 (120 Days Past Due), 263 (150 Days Past Due), and 264 (180 Days or More Past Due). The following header fields are blank: Scheduled Payment Amount, Actual

Payment Amount, Date of Last Activity, Date Major Delinquency First Reported, and Deferred Payment Start Date. The 24-Month History table contains twenty rows spanning April 2024 through November 2025. The Actual Payment Amount column is blank on every one of these twenty rows -- twenty consecutive blank Actual Payment Amount fields. Additionally, the Credit Limit column is blank on every row. This account contributes in excess of twenty-five blank or missing data fields to the Disclosure.

15. Dept of Ed/Aidvantage, Account *0220 (Education Loan -- Closed, Transfer/Sold, was over 120 Days Past Due). This account bears the same narrative codes as Account *0221. The following header fields are blank: Scheduled Payment Amount, Actual Payment Amount, Date of Last Activity, Date Major Delinquency First Reported, and Deferred Payment Start Date. The 24-Month History table contains nineteen rows spanning April 2024 through November 2025. The Actual Payment Amount column is blank on every one of these nineteen rows. The Credit Limit column is blank on every row. This account contributes in excess of twenty-five blank or missing data fields to the Disclosure.

16. USAlliance Federal Credit Union, Account *9680 (Secured -- Closed, Paid and Closed). This account contains no 24-Month History table. The following fields are blank: Scheduled Payment Amount, Actual Payment Amount, and Credit Limit. This account contributes in excess of six blank or missing data fields to the Disclosure.

17. In total, Plaintiff's April 14, 2026 file disclosure from Equifax contains in excess of one hundred seventy-five blank, missing, or static placeholder data fields across the seven credit account tradelines.

**C. Per Se Inaccuracies -- Balance Exceeds High Credit**

18. On US Department of Education Account *3675, the Disclosure reports a current balance of three thousand eight hundred fifty-five dollars ($3,855.00) against a stated High Credit of three thousand eight hundred six dollars ($3,806.00). The reported balance exceeds the

stated High Credit figure by forty-nine dollars ($49.00). A balance that exceeds the high credit on a student loan installment account is a per se inaccuracy, as the high credit figure is designed to represent the maximum amount ever owed on the account.

19. On US Department of Education Account *3670, the Disclosure reports a current balance of six thousand seven hundred fifty-eight dollars ($6,758.00) against a stated High Credit of six thousand six hundred seventy-four dollars ($6,674.00). The reported balance exceeds the stated High Credit by eighty-four dollars ($84.00). This is a per se inaccuracy for the same reason.

20. On information and belief, Equifax's data systems do not employ any automated comparison of current balance against the stated high credit figure before publishing a consumer report. The absence of such a basic data-integrity check, allowing a reported balance to exceed the high credit on the same account entry, is objectively unreasonable.

**D. Materially Misleading Reporting -- Dual Reporting of Same Transferred Debt**

21. The Disclosure reflects two Dept of Ed/Aidvantage accounts, *0221 and *0220, each bearing Activity Designator "Transfer/Sold" and Narrative Code 123 (Account Transferred or Sold). Both accounts show delinquency escalating to 180 days past due in 2025 and were closed on November 23, 2025.

22. The same Disclosure reflects two US Department of Education collection entries, Account *3675 and Account *3670, each bearing Narrative Code 057 (Collection Account). These collection entries identify the same originating entity (US Department of Education) and show delinquency beginning November 27, 2024 -- the same underlying student loan debts that were transferred from the Aidvantage servicing accounts.

23. The simultaneous reporting of the transferred Aidvantage accounts with active delinquency notations and the corresponding collection account entries creates a materially misleading picture. A reader of this file disclosure would understand Plaintiff

to carry two separate delinquent education debts with Aidvantage and two additional separate collection accounts with the Department of Education, when in fact both sets of entries represent the same underlying obligations. This dual-reporting pattern is misleading under the standard articulated in

24. Additionally, both Dept of Ed/Aidvantage accounts show Narrative Code 088 (Student Loan -- Payment Deferred) on entries from April 2024 through September 2024, a period during which the payment history grid shows no delinquency. However, delinquency notations then begin appearing in March 2025 at the 90-days-past-due level and escalate to 180 days past due. The transition from documented deferment to severe delinquency without any intervening period showing payments coming due or a clear transition date creates an internal conflict in the account record regarding the point at which Plaintiff's payment obligations resumed, making the delinquency reporting materially misleading.

**E. Third-Party Dissemination**

25. Equifax transmitted Plaintiff's consumer report to Capital One, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure dated May 16, 2025. On that date, Defendant transmitted all information then in Plaintiff's file to Capital One, including the inaccurate and incomplete tradeline data described herein.

26. Equifax transmitted Plaintiff's consumer report to Citibank NA / Best Buy, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure dated January 2, 2025. On that date, Defendant transmitted all information then in Plaintiff's file to Citibank NA / Best Buy, including the inaccurate and incomplete tradeline data described herein.

27. Each dissemination of Plaintiff's consumer report to a third-party creditor constitutes a separate publication of the incomplete and inaccurate file data described in this Complaint.

**F. Willfulness**

28. The FTC Advisory Opinion to Katrina Darcy, dated June 30, 2000, placed all nationwide consumer reporting agencies on specific, written notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. Section 1681g(a)(1). Equifax has operated under this explicit notice for over a quarter century and has made no correction to its disclosure practices with respect to the fields identified in this Complaint.

29. The identical blank Actual Payment Amount columns across every account in Plaintiff's disclosure, the identical static placeholder date of January 5, 2024 frozen across twenty-two consecutive rows on the USAlliance account, and the identical blank Credit Limit columns across every row of every account confirm that these omissions result from deliberate, uniform data policy rather than isolated data entry error. A single error affects a single field. A policy affects every field, every account, every time.

30. Equifax's continued operation of a file disclosure policy that systematically omits complete payment data from consumer-facing disclosures, despite over twenty-five years of specific regulatory notice, is objectively unreasonable within the meaning of *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), and constitutes a willful violation of 15 U.S.C. Sections 1681g(a)(1) and 1681e(b).

**G. Actual Damages**

31. As a direct and proximate result of Equifax's violations of the FCRA, Plaintiff has suffered actual damages including emotional distress, anxiety, and frustration arising from her inability to verify the accuracy of her own credit file; impaired creditworthiness resulting from the inaccurate balance-over-high-credit reporting and the misleading dual-reporting of the transferred student loan debts; lost credit opportunities based on the inaccurate and incomplete information transmitted to creditors in response to hard

inquiries; the inability to verify and evaluate the derogatory notations appearing in her file; and the expenditure of time and personal resources in attempting to understand and investigate the errors in her disclosure.

## V. CAUSES OF ACTION

## COUNT I

### Violation of 15 U.S.C. Section 1681g(a)(1)

### Incomplete File Disclosure

32. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

33. Section 1681g(a)(1) of the FCRA provides that every consumer reporting agency, upon request by a consumer, shall clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

34. The term "file" as defined by 15 U.S.C. Section 1681a(g) means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.

35. The FTC Advisory Opinion to Katrina Darcy (June 30, 2000) established that a consumer reporting agency that withholds data fields from a consumer's file disclosure while providing that same data to third parties does not technically comply with Section 1681g because it does not provide an accurate -- and perhaps not a clear -- disclosure of all information in the file. This opinion has placed all nationwide CRAs, including Equifax, on specific notice of this obligation for over twenty-five years. See also *Alexander v. Equifax Info. Servs., LLC*, 2018 WL 3025939 (D. Nev. 2018) (file disclosure is "unclear such that the consumer cannot determine the accuracy of the information").

36. On April 14, 2026, in response to Plaintiff's request for her file disclosure, Equifax provided a Disclosure containing in excess of one hundred seventy-five blank, missing, or static placeholder data fields across seven credit account tradelines, as described in detail in Section IV.B above.

37. Specifically: On Western Funding Inc. Account *1273, the Credit Limit column is blank across all fifteen rows of the 24-Month History and the Last Payment Date column shows the identical date of July 11, 2025 across three consecutive months (September, October, and November 2025), with the Actual Payment Amount blank for the November 2024 row, contributing in excess of thirty blank or static placeholder fields.

38. On US Department of Education Account *3675, twelve header fields are blank, and the 24-Month History row for February 2026 shows blank Scheduled Payment Amount, Actual Payment Amount, and Last Payment Date, contributing in excess of twenty blank or missing fields.

39. On US Department of Education Account *3670, the same twelve header fields are blank, and the 24-Month History row for February 2026 shows blank Scheduled Payment Amount, Actual Payment Amount, and Last Payment Date, contributing in excess of twenty blank or missing fields.

40. On USAlliance Federal Credit Union Account *2785, the Actual Payment Amount field is blank across all twenty-two rows of the 24-Month History table, and the Last Payment Date is frozen at the identical static value of January 5, 2024 across all twenty-two consecutive rows spanning April 2024 through February 2026, contributing in excess of fifty blank or static placeholder fields. The static date of January 5, 2024 is a placeholder, not a reflection of actual monthly payment activity.

41. On Dept of Ed/Aidvantage Account *0221, the Actual Payment Amount column is blank on all twenty rows of the 24-Month History table and the Credit Limit column is blank on every row, contributing in excess of twenty-five blank or missing fields.

42. On Dept of Ed/Aidvantage Account *0220, the Actual Payment Amount column is blank on all nineteen rows of the 24-Month History table and the Credit Limit column is blank on every row, contributing in excess of twenty-five blank or missing fields.

43. On USAlliance Federal Credit Union Account *9680, the Scheduled Payment Amount, Actual Payment Amount, and Credit Limit are blank, contributing in excess of six blank or missing fields.

44. On information and belief, the furnishers for each of the above accounts transmitted complete payment data to Equifax and this data was contained within Equifax's file on Plaintiff at the time of her April 14, 2026 request. Equifax's own internal entity performed a soft inquiry on Plaintiff's file on April 14, 2026, as reflected in the Disclosure, confirming that the file was active and in use as of the date of the request.

45. The identical pattern of blank Actual Payment Amount columns, blank Credit Limit columns, and the static frozen placeholder date appearing across twenty-two consecutive rows on the USAlliance account confirms that these omissions result from a systemic, uniform data policy applied to Plaintiff's file disclosure, not from isolated error.

46. Equifax's conduct in providing an incomplete file disclosure, after more than twenty-five years of specific notice from the FTC, constitutes a willful failure to comply with 15 U.S.C. Section 1681g(a)(1), within the meaning of 15 U.S.C. Section 1681n and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). In the alternative, Equifax's conduct constitutes a negligent failure to comply with 15 U.S.C. Section 1681g(a)(1), within the meaning of 15 U.S.C. Section 1681o. See also *Williams v. First Advantage LNS Screening Solutions, Inc.*, 947 F.3d 735 (11th Cir. 2020).

47. As a result of Equifax's violations, Plaintiff is entitled to: actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. Sections

1681n(a)(3) and 1681o(a)(2). Pro se plaintiff Juvenska Charles is proceeding without counsel. See *Erickson v. Pardus*, 551 U.S. 89 (2007).

**COUNT II**

**Violation of 15 U.S.C. Section 1681e(b)**

**Per Se Inaccuracy -- Balance Exceeds High Credit**

48. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

49. Section 1681e(b) of the FCRA provides that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

50. On US Department of Education Account *3675, Equifax's April 14, 2026 Disclosure reports a current balance of three thousand eight hundred fifty-five dollars ($3,855.00) and a High Credit figure of three thousand eight hundred six dollars ($3,806.00). The reported balance exceeds the stated High Credit by forty-nine dollars ($49.00). A balance that exceeds the high credit on the same account entry is a per se inaccuracy, as the high credit represents the maximum amount ever owed on that account.

51. On US Department of Education Account *3670, Equifax's April 14, 2026 Disclosure reports a current balance of six thousand seven hundred fifty-eight dollars ($6,758.00) and a High Credit figure of six thousand six hundred seventy-four dollars ($6,674.00). The reported balance exceeds the stated High Credit by eighty-four dollars ($84.00), a per se inaccuracy for the same reason.

52. On May 16, 2025, Equifax transmitted Plaintiff's consumer report to Capital One. On January 2, 2025, Equifax transmitted Plaintiff's consumer report to Citibank NA / Best

Buy. On information and belief, the inaccurate balance-over-high-credit data on the US Department of Education accounts was present in Equifax's file on Plaintiff at the time of these transmissions.

53. Equifax does not employ any automated comparison of current balance against the stated high credit figure before publishing a consumer report. The absence of such a basic data-integrity check is objectively unreasonable and constitutes a failure to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. Section 1681e(b).

54. Equifax's conduct constitutes a willful failure to comply with 15 U.S.C. Section 1681e(b), within the meaning of 15 U.S.C. Section 1681n and *Safeco*, 551 U.S. 47 (2007). In the alternative, Equifax's conduct constitutes a negligent failure to comply with 15 U.S.C. Section 1681e(b) within the meaning of 15 U.S.C. Section 1681o.

55. As a result of Equifax's violations, Plaintiff is entitled to: actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2).

## COUNT III

## Violation of 15 U.S.C. Section 1681e(b)

## Materially Misleading Reporting

56. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

57. Section 1681e(b) prohibits consumer reporting agencies from publishing consumer reports that, though technically accurate as to individual data points, are materially misleading in their overall effect.

58. Equifax's April 14, 2026 Disclosure simultaneously reports: (a) Dept of Ed/Aidvantage Account *0221 and Account *0220, each bearing Activity Designator "Transfer/Sold" and Narrative Code 123 (Account Transferred or Sold), with delinquency notations escalating to 180 days past due; and (b) US Department of Education collection accounts *3675 and *3670, each bearing Narrative Code 057 (Collection Account), with amounts past due totaling ten thousand six hundred thirteen dollars ($10,613.00). Both sets of entries arise from the same underlying student loan obligations, transferred from Aidvantage servicing to collection. A consumer, creditor, or any other user of this report would reasonably interpret this presentation as two separate sets of delinquent obligations totaling more than twenty thousand dollars in delinquent debt, when in fact the Aidvantage and collection entries represent the same underlying debts. This is materially misleading under *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619 (6th Cir. 2018).

59. Additionally, the Dept of Ed/Aidvantage accounts reflect Narrative Code 088 (Student Loan -- Payment Deferred) during the period April 2024 through September 2024, followed by escalating delinquency beginning March 2025. The Disclosure contains no data showing when the deferment period ended, when payment obligations resumed, or what the applicable payment amounts were at the time delinquency began. The delinquency notations appearing on these accounts immediately following the deferment period, without any intervening payment data or transition information, presents a materially misleading picture of Plaintiff's payment behavior. See *Gorman v. Wolpoff and Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (a technically accurate report can still violate Section 1681e(b) if it creates a materially misleading impression).

60. Equifax transmitted the materially misleading report described in this Count to Capital One on May 16, 2025, and to Citibank NA / Best Buy on January 2, 2025.

61. Equifax's conduct constitutes a willful failure to comply with 15 U.S.C. Section 1681e(b), within the meaning of 15 U.S.C. Section 1681n and *Safeco*, 551 U.S. 47 (2007). In the alternative, Equifax's conduct constitutes a negligent failure to comply with 15 U.S.C. Section 1681e(b) within the meaning of 15 U.S.C. Section 1681o.

62. As a result of Equifax's violations, Plaintiff is entitled to: actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1); statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A); punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2); and costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Juvenska Charles respectfully requests that this Court enter judgment in her favor and against Defendant Equifax Information Services, LLC, and award the following relief:

(a) Judgment in favor of Plaintiff on all counts;

(b) Actual damages pursuant to 15 U.S.C. Sections 1681n(a)(1) and 1681o(a)(1) in an amount to be determined at trial;

(c) Statutory damages of not less than one hundred dollars ($100.00) and not more than one thousand dollars ($1,000.00) per willful violation pursuant to 15 U.S.C. Section 1681n(a)(1)(A), including a separate statutory damages amount for each hard inquiry dissemination identified in this Complaint;

(d) Punitive damages pursuant to 15 U.S.C. Section 1681n(a)(2) in an amount sufficient to deter Equifax from continuing its practice of withholding complete file data from consumer disclosures;

(e) Costs of this action pursuant to 15 U.S.C. Sections 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Equifax to provide Plaintiff with a complete and corrected file disclosure containing all data fields in Equifax's possession concerning Plaintiff's accounts;

(g) Such other and further relief as this Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add reinvestigation counts under 15 U.S.C. Section 1681i following expiration of the CRA's 30-day reinvestigation window.

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Juvenska Charles

Juvenska Charles
Pro Se Plaintiff
185 County St
Fall River, Massachusetts 02723-2103
Email: juvenskac@gmail.com
Phone: (508) 615-7379
Date: June 10, 2026